IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:20-CV-170-RJ

JOSEPH BEISLER,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -25] pursuant to Fed. R. Civ. P. 12(c). Claimant Joseph Beisler ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI on May 21, 2018, alleging disability beginning October 1, 2017. (R. 10, 260–70). Both claims were denied initially and upon reconsideration.[1] (R. 10, 78–125). A hearing before the Administrative

---

[1] The SSI claim was initially allowed on reconsideration but was later disallowed. (R. 37–39, 98–111, 125).

Law Judge ("ALJ") was held on October 9, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 10, 30–77). On December 16, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–24). On July 14, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

2

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to perform a proper function-by-function assessment of Claimant's ability to stand and walk, and (2) misevaluating the medical opinion evidence. Pl.'s Mem. [DE-24] at 7–14.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since October 1, 2017, the alleged onset date. (R. 13). Next, the ALJ determined Claimant had the severe impairments of obesity, status-post left patellar fracture with residual symptoms; right knee degenerative joint disease; and spondylosis of the lumbar spine, and the nonsevere impairments of hyperlipidemia and left upper extremity biceps tendinitis. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13–14).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations:

> Frequent climbing of ramps and stairs, but only occasional climbing of stepladders up to four vertical feet in height, with no climbing of higher ladders or of ropes or scaffolds of any height – frequent balancing and stooping – occasional kneeling, crouching, and crawling – occasional exposure to extreme cold, and to vibration and high, exposed places.

(R. 14–17). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence of record. (R. 15). At step four, the ALJ concluded Claimant was unable to perform his past relevant work as a concrete block mason. (R. 17–18). Nonetheless, at step five, upon considering Claimant's age, education, work

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 18–19).

## V. DISCUSSION

Claimant contends that due to his bilateral knee impairments, he is unable to stand and walk consistent with the RFC determined by the ALJ. Specifically, Claimant argues that the ALJ failed to perform a proper function-by-function assessment of Claimant's ability to stand and walk and misevaluated the medical opinion evidence. Pl.'s Mem. [DE-24] at 7–14. Defendant contends the record supports the ALJ's RFC finding and the ALJ properly evaluated the medical opinion evidence. Def.'s Mem. [DE-26] at 6–17.

### A. The Medical Opinion Evidence

Claimant contends Dr. Schofield, a state agency medical consultant; Dr. Gebrail, a consultative examiner; and Dr. Frank, a treating physician, each offered an opinion that would suggest Claimant is limited to sedentary work, and the ALJ's reasoning for finding the opinions less than persuasive is not supported by the record. Pl.'s Mem. [DE-24] at 12–14.

Claimant protectively filed his applications on May 21, 2018, and thus, 20 C.F.R. §§ 404.1520c and 416.920c, which apply to claims filed on or after March 27, 2017, govern how the ALJ considered the medical opinions in Claimant's case. The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical

5

opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a).

The regulations also require the ALJ to "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). However, when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

### 1. Dr. Gebrail's Opinion

Dr. Gebrail performed a consultative examination of Claimant on June 1, 2015.[3] (R. 367–70). Claimant reported that he had a left patellar fracture following a motorcycle accident requiring two patellar reconstructions with internal fixation. As a result, Claimant reported experiencing difficulty with climbing stairs, getting out of chairs, kneeling, stooping, squatting, and agility-type activities, as well as occasional instability. (R. 367). Claimant previously performed restoration

---

[3] Dr. Gebrail's consultative examination appears to have been issued in relation to a prior claim filed by Claimant in 2014. (R. 126–46).

6

work which required ladders, kneeling and stooping, heavy lifting, bending, and twisting but stopped working in 2008 as a result of his knee injury.[4] *Id.* He also reported fatigue, weight gain, weakness to the legs, numbness, and tingling and joint pain. *Id.* On examination of Claimant's left knee, Dr. Gebrail noted extensive scarring around the patella region, full range of motion, tenderness over the anterior lateral and medial joint line as well as overlying the patella, intact quadriceps and patellar tendons, 4/5 strength in the lower extremity muscle groups including the quadriceps hamstring, stable gait without any assistive devices, and difficulty squatting, stooping, and rising due to discomfort and knee pain. (R. 368–69). Dr. Gebrail assessed Claimant with chronic knee pain secondary to traumatic osteoarthritis with history of left patellar fracture status post internal fixation and revision and concluded that he would "have difficulty with kneeling, stooping, squatting, climbing ladders, carrying heavy objects, and working in areas of high altitudes per his report," he may benefit from vocational rehabilitation, he may be able to work "in a sedentary position with low laborious responsibilities," and further medical care to treat his discomfort and pain may be of benefit. (R. 369).

The ALJ found Dr. Gebrail's opinion to be "not persuasive" because it was not expressed in vocationally specific terms, it was a remote examination performed years prior to the alleged onset date, and it was not consistent with the current record showing Claimant received injections for pain in the left and right knee, he does not use a cane, and at times he has a normal gait and station. (R. 17). Claimant takes issue with the ALJ's reliance on the age of Dr. Gebrail's opinion and on Claimant's failure to use a cane and normal gait, arguing the ALJ cherrypicked evidence

---

[4] Claimant was subsequently self-employed from 2014–18, performing small, odd jobs, such as painting, repairs, and finish work, and he continued working part time in 2019 for his wife's company overseeing another employee's work on the jobsite. (R. 44–46); (R. 484 – Aug. 20, 2019 treatment note indicating Claimant was currently working about twenty hours a week at a manual labor/construction job with modified duties).

by ignoring other significant findings in the same treatment note. Pl.'s Mem. [DE-24] at 12–13.

First, Claimant is correct that a medical opinion that predates the alleged onset date may still be considered. *See Cotton v. Colvin*, No. 5:14-CV-00425-FL, 2015 WL 5725518, at *5 (E.D.N.C. Aug. 12, 2015) ("Where evidence predating the onset of disability is relevant to an issue in the case, the ALJ should consider that evidence in making a determination on the issue.") (quoting *Treadwell v. Colvin*, No. 5:13-CV-370-FL, 2014 WL 4656852, at *10 (E.D.N.C. Sept. 17, 2014) (collecting cases)), *adopted by* 2015 WL 5714912 (E.D.N.C. Sept. 29, 2015). However, that does not mean that the age of the opinion is irrelevant. *See Marshall v. Saul*, No. 5:20-CV-55-FL, 2020 WL 7390486, at *7 (E.D.N.C. Nov. 19, 2020) (finding the ALJ did not err in weighing a medical opinion where the medical opinion predated the claimant's alleged onset date by approximately 19 months, and the ALJ found that more recent records demonstrated Claimant was stable on her medication regimen with improved depression and memory), *report and recommendation adopted*, 2020 WL 7388433 (E.D.N.C. Dec. 16, 2020). Here, the ALJ did not decline to consider Dr. Gebrail's opinion, and evaluated its persuasiveness in accordance with the regulations. The ALJ appropriately considered that Dr. Gebrail's opinion was issued more than two years before Claimant's alleged onset date and was inconsistent with the current record, which demonstrates that Claimant did not use a cane or other assistive device, at times had a normal gait and station, and opted for treatment with conservative measures, such as injections. (R. 17, 480, 490–505).

Next, the ALJ did not impermissibly cherry pick evidence. The ALJ acknowledged that Claimant had a right knee meniscal tear and effusion, but noted that he declined recommended surgery and opted for conservative treatment with injections and that he had an antalgic gait in August 2018 and April 2019, but a normal gait and station in August 2019. (R. 15–16, 390, 395,

8

400, 404, 408, 469, 472, 480, 486, 491, 502). Where the ALJ acknowledges contradictory evidence in the record and explains his reasoning, it is not the court's role to re-weigh the evidence or to substitute its decision for the ALJ's. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). Furthermore, Claimant's decision to continue with conservative treatments rather than the recommended surgery suggests his condition was not as disabling as he asserted. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (concluding that conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015).

Finally, the ALJ complied with the regulations in considering the requisite factors of supportability, consistency, relationship, and specialization set forth in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Claimant asserts that it is not apparent that the ALJ meaningfully considered the factors as required by the Fourth Circuit in *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377 (4th Cir. 2021). Pl.'s Mem. [DE-24] at 13–14. The Fourth Circuit in *Dowling* concluded that "[w]hile an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* at 385. The *Dowling* case applied regulations applicable to claims filed before March 27, 2017. *See id.* at 384 n.8. The instant case is governed by new regulations, which provide for consideration of the same factors but require only a limited *explanation* of how those

9

factors are considered:

> we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Claimant does not point to any specific factors he believes the ALJ failed to consider, the ALJ's explanation demonstrates he considered the factors of supportability, consistency, and relationship, and there is no evidence that the specialization factor was relevant. Accordingly, the ALJ's explanation was sufficient under the regulations.

### 2. Dr. Frank's Opinion

On August 20, 2019, Claimant saw Dr. Frank to "establish care" for his knee pain and hyperlipidemia. (R. 483). Claimant reported working a manual labor/construction job with modified duties about twenty hours a week and that his knee pain made work difficult. (R. 484). Dr. Frank noted Claimant had osteoarthritis and had undergone injections in both knees. *Id.* Claimant reported constant knee pain made worse by walking on uneven ground and sitting for long periods of time, like when driving; pain interfered with his sleep; he had significant difficulty with squatting or kneeling, and his knees would occasionally give out and cause him to fall; he could walk for about fifty yards, stand for up to forty minutes, and sit for up to thirty minutes; he did not use any sort of assistive device; and when he attempted to increase activity he experienced swelling and pain in his knee the following day, which further restricted his activities. *Id.* On examination, Claimant had normal gait and station but his left knee had noticeable boney abnormality with tenderness at the medial joint line, full but painful range of motion, solid end points to all ligaments bilaterally, some increased pain with meniscal compression testing

10

bilaterally, pain along the medial joint line on the right knee, moderate difficulty with squatting, negative figure four and straight leg raise test bilaterally, and no difficulty with heel/toe, standing, or tandem walking. (R. 486). Dr. Frank concluded Claimant had some significant functional and employment limitations due to his severe knee pain, including walking no more than fifty yards on level ground; no climbing ladders or stairs; no repetitive kneeling, stooping, bending, or lifting; no lifting more than fifteen pounds regularly or twenty five pounds occasionally; standing no more than three hours and sitting no more than three hours over the course of a day; the ability to get up and move around as needed; the ability to arrive late, or more likely, leave early during the workday due to his knee pain; likely missing work on days when his pain is severe; and difficulty concentrating for the majority of the workday and particularly near the end of the day. (R. 484).

The ALJ found Dr. Frank's opinion "generally unpersuasive" because it was not supported by Dr. Frank's examination demonstrating painful but full range of motion on the left knee, only moderate difficulty squatting, negative straight leg raise testing, normal gait and station, and no difficulties with heel/toe, standing, or tandem walking, and it was also inconsistent with other treatment notes of record. (R. 17).

Claimant contends that Dr. Frank's opinion is not contradicted by his examination findings that demonstrated moderate joint swelling, abnormal range of motion, tenderness and boney abnormality in the left knee, increased pain with meniscal compression testing bilaterally, pain along the medial joint line on the right knee, and difficulty squatting. Pl.'s Mem. [DE-24] at 13. Dr. Frank's treatment note states both that Claimant's knees had "abnormal ROM" and "full ROM, but it is painful." (R. 486). The ALJ acknowledged Claimant had painful range of motion of the left knee and tenderness of the right knee, as well as moderate difficulty squatting, but also that he demonstrated negative straight leg raise testing, normal gait and station, and no difficulties with

11

heel/toe, standing, or tandem walking. (R. 17, 486). As explained above, it is not the court's role to re-weigh the evidence. *See Hancock*, 667 F.3d at 472. Furthermore, the ALJ found Dr. Frank's opinion inconsistent with other evidence of record, including treatment notes from Claimant's treating orthopedist, which indicated that Claimant opted to proceed with conservative measures, such as NSAIDs and injections, and declined knee surgery for which he was deemed an "excellent candidate." (R. 17, 480, 490–505); *see Dunn*, 607 F. App'x at 275; *Richardson*, 2015 WL 5725546, at *6. Finally, the ALJ's explanation demonstrates he considered the factors of supportability, consistency, and relationship, with focus on the first two factors as required by the regulations. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Accordingly, the ALJ sufficiently explained his reasons, which are supported by the record, for finding Dr. Frank's opinion not persuasive. *See Dunn*, 607 F. App'x at 267 ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion.") (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

### 3. Dr. Schofield's Opinion

Dr. Schofield, a state agency medical consultant, opined on September 15, 2018, based on a review of the record evidence, that Claimant was limited to less than a full range of light work with sedentary standing and walking. (R. 107–08). The ALJ determined the reduced standing limit of two hours was not well supported based on the whole record that shows Claimant does not use a cane and at times has a normal gait and station. (R. 16). The ALJ noted that other portions of Dr Schofield's opinion were not materially different than the RFC. *Id.*

Claimant suggests that the use of a cane is not required for a claimant to be limited to sedentary work. Pl.'s Mem. [DE-24] at 12. While true that it is not required, whether Claimant

12

utilized a cane, as well as whether Claimant demonstrated a normal gait, are relevant considerations in assessing a claimant's limitations. *See Creegan v. Colvin*, No. 1:13-CV-5, 2014 WL 3579659, at *8 (W.D.N.C. July 21, 2014) (rejecting argument that the ALJ did not properly account for a doctor's observation that the claimant's "left leg demonstrates reasonable strength but has a great deal of discomfort," where the ALJ expressly considered the doctor's report in which he indicated that the claimant did not use a cane or any other handheld assistive device and ambulated with a gait that was not unsteady or unpredictable). Furthermore, as discussed above with respect to Dr. Gebrail's and Dr. Frank's opinions, the ALJ did not cherry pick evidence. The ALJ acknowledged contradictory evidence in the record regarding Claimant's knee pain, positive MRI findings, and at times antalgic gait; however, the ALJ explained that Claimant opted to proceed with conservative treatment rather than recommended surgery, received injections, and at times demonstrated a normal gait and station. (R. 15–16, 390, 395, 400, 404, 408, 469, 472, 480, 486, 491, 502). The ALJ also stated that Dr. Schofield was a "state agency medical consultant," i.e., he did not examine Claimant, and the ALJ explicitly addressed the factors of supportability and consistency. Accordingly, the ALJ's explanation regarding Dr. Schofield's opinion complied with the regulations and was supported by the record.

## B. The Function-By-Function Assessment

Claimant contends that the ALJ failed to perform a proper function-by-function assessment of Claimant's ability to stand and walk; specifically, he asserts that his bilateral knee pain from severe arthritis and a complex meniscal tear prevents him from standing for more than fifteen minutes before needing to sit, and when his knees are bothering him he applies ice, stays off of them, and elevates his legs for a couple of hours. Pl.'s Mem. [DE-24] at 7–11.

"[T]he residual functional capacity 'assessment must first identify the individual's

13

functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

The ALJ did not perform an explicit function-by-function analysis in formulating Claimant's RFC, (R. 14–17), but here meaningful review is not frustrated by the ALJ's failure. The ALJ acknowledged Claimant's testimony that he continues to experience debilitating knee pain despite injections and occasional bracing, that he must sit down in the shower, that he experienced increased pain and swelling in his knees when he stands or walks for more than fifteen minutes, and that he must elevate his legs after standing or sitting for twenty minutes. (R. 15).

14

The ALJ also acknowledged that objective evidence indicated tricompartmental degenerative changes of the left knee and a meniscal tear and effusion of the right knee. (R. 15–16). However, Claimant's course of treatment indicated that he opted for conservative measures, such as injections and NSAIDs to manage his pain, and he declined surgery for which he was deemed to be an excellent candidate; his gait was noted to be at times antalgic, but at other times it was noted to be normal; and Claimant did not require the use of an assistive device to ambulate. (R. 15–16, 390, 395, 400, 404, 408, 469, 472, 480, 486, 491, 502); *see Prince v. Saul*, No. 1:19CV329, 2020 WL 1363561, at *4 (M.D.N.C. Jan. 24, 2020) (finding substantial evidence supported the ALJ's RFC where the ALJ noted, among other things, that the claimant declined recommended surgery in lieu of continuing with conservative treatment measures), *report and recommendation adopted*, No. 1:19CV329, 2020 WL 1332398 (M.D.N.C. Mar. 23, 2020). The court also notes that on several occasions Claimant reported his increased knee pain was from excessive kneeling while doing construction-type work, (R. 449, 470, 480, 499, 502), and the ALJ limited Claimant to only occasional kneeling in the RFC. Finally, the ALJ discussed the opinion evidence suggesting that Claimant was limited to less than light work, but found those opinions less than persuasive, and the ALJ's determination, as explained above, was in accordance with the regulations and supported by the record. (R. 16–17).

The ALJ's RFC discussion was not lengthy, but neither was the record in this case, and meaningful review is not frustrated where the ALJ considered Claimant's testimony, his course of treatment, and the medical opinion evidence, and the court can trace the ALJ's reasoning, which is supported by the record. *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (finding no error where the ALJ's justification, "albeit somewhat sparse," was sufficient to demonstrate the ALJ performed an adequate review of the whole record and that the decision is supported by

15

substantial evidence). Accordingly, the ALJ's RFC assessment that Claimant could perform light work with additional postural limitations is supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-23] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] is ALLOWED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED, this the 7th day of March, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge